Reid A. Winthrop (SBN 223527)
Henry Harmeling IV (SBN 207673)
**WINTHROP LAW GROUP, P.C.**
120 Newport Center Dr.
Newport Beach, California 92660
Phone: 949-269-3256 | Fax: 949-432-3526
reid@winthroplawgroup.com

Attorney for Plaintiff SAVAGE ENTERPRISES

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAVAGE ENTERPRISES, a Wyoming corporation;<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER WHEELER, an individual; PRESTON WHEELER, an individual; AMBYR FREESTONE, an individual; EXODUS HEMP LLC, a Wyoming limited liability company; SACRED EXODUS LLC, a Wyoming limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>1) **FALSE DESINATION OF ORIGIN / INFRINGEMENT OF UNREGISTERED TRADE DRESS [15 U.S.C. § 1125(a)];**<br><br>2) **BREACH OF CONTRACT – SALES AND ADVERTISING;**<br><br>3) **BREACH OF CONTRACT – DISPARAGEMENT; AND**<br><br>4) **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff Savage Enterprises ("Savage") alleges, upon actual knowledge with respect to itself and its own acts, and on information and belief as to all other parties, as follows:

## **PARTIES TO THE ACTION**

1.     Plaintiff Savage Enterprises ("Savage") is a Wyoming corporation with the principal place of business at 7505 Irvine Center Drive, Suite 200, Irvine, California 92618.

2.     Defendant Christopher Wheeler ("Wheeler"), an individual residing in Orange County, CA, is a former co-founder, director, President and CEO of Savage, as well as Trustee of the Chris Wheeler Trust.

3.     Defendant Preston Wheeler ("P. Wheeler"), an individual residing in Orange County, CA, is a younger brother of Wheeler, who Wheeler publicly holds out as a business partner in Wheeler's new company(s). P. Wheeler was formerly an employee of Savage, and is complicit in Defendant Wheeler's bad acts.

5.     Defendant Ambyr Freestone ("Freestone") is an individual residing in Orange County, CA is a former employee of Savage and Defendant Wheeler's assistant. On information and belief, Defendant Ambyr Freestone has a "personal relationship" with Defendant Wheeler and was and is complicit in, and aided and abetted, his bad acts prior to and after their departure from Savage.

7.     Defendant Exodus Hemp, LLC ("Exodus") is, and at all times relevant to this action was, a limited liability company organized and existing under the laws of the State of Wyoming, with its principal place of business in Orange County, California, and is a company created by Wheeler on May 17, 2023 to compete with Savage.

8.     Defendant Sacred Exodus, LLC ("Sacred") is, and at all times relevant to this action was, a limited liability company organized and existing under the laws of the State of Wyoming, with its principal place of business in Orange County, California, and is a company created by Wheeler on March 14, 2023 to compete with Savage.

9.     Defendants Wheeler, P. Wheeler, Freestone, Exodus and Sacred will sometimes be referred to herein collectively as "Defendants."

10.    Defendants P. Wheeler and Freestone will sometimes be referred to herein collectively as the "Individual Defendants."

11.    Defendants Exodus and Sacred will sometimes be referred to herein as the "Exodus Parties."

## DOE DEFENDANTS

12.    The true names and capacities of the defendants sued as DOES 1 through 10, whether individual, corporate, associate or otherwise ("Doe Defendants"), are unknown to Plaintiff at the time of filing this Complaint and Plaintiff, therefore, sues said Doe Defendants by such fictitious names and will ask leave of Court to amend this Complaint to show their true names or capacities when the same have been ascertained. In particular, Defendant Wheeler has formed and operated several companies and/or corporations, the names and identities unknown to Plaintiff, and will be discovered during discovery in this action.  For example, companies formerly operated by Wheeler – New Savage LLC and Exodus Enterprises LLC – appear to no longer operate.  The identities of Wheeler's current companies are therefore unknown.  Plaintiff is informed and believes, and thereon alleges, that each of the Doe Defendants is, in some manner, responsible for the events and happenings herein set forth and proximately caused injury and damages to the Plaintiff as herein alleged.

13.    Plaintiff is informed and believes and, on that basis, alleges that each of the fictitiously named Doe Defendants is in some manner responsible for the damages to Plaintiff as alleged in this Complaint.  Plaintiff will amend this Complaint to show the true names and capacities of these fictitiously named Doe Defendants after their true names and capacities have been ascertained.

## JURISDICTION AND VENUE

14.    Jurisdiction rests with this Court, and venue is proper in this Court, pursuant to a Settlement Agreement/Stipulation entered into by Savage and Defendant

Christopher Wheeler, which Settlement Agreement/Stipulation was incorporated into an Order dated July 7, 2023 [Dkt. 57] that was entered by the Honorable Hernan D. Vera of the United States District Court for the Central District of California, in Case No. 8:23-cv-00578-HDV-PVC (dismissed without prejudice) (the "Prior Action"), pursuant to which Stipulation and Order both Savage and Wheeler agreed to submit to themselves to the personal jurisdiction of the United States District Court for the Central District of California and that said court would be the exclusive and proper jurisdiction and venue for any future actions.  Plaintiff is filing a Notice of Related Case regarding the Prior Action concurrently with the filing of this Complaint.

15.    In addition to stipulating that this Court is the proper jurisdiction and venue for the claims made in this Complaint, both Savage and Wheeler stipulated that California law is to be applied to all of the claims and issues asserted in this Complaint. All Defendants named in this action were parties to the Settlement Agreement/Stipulation in the Prior Action including, but not limited to, Wheeler, P, Wheeler, Freestone, Exodus and Sacred.  All acts alleged in this Complaint took place within the State of California and in this District. Venue is proper in this Court pursuant to 28 U.S.C. section 1391 because the documents and conduct at issue were executed and performed within the state of California in this District.

16.    This is also an action for violations of the federal trademark and unfair competition laws (15 U.S.C. § 1125 *et seq*.).  This Court has subject matter jurisdiction under 15 U.S.C. section 1121 and 28 U.S.C. section 1338(a), in that this case arises under the trademark laws of the United States and thus presents a federal question. The court also has supplemental jurisdiction over all claims not arising under the laws of the United States pursuant to 28 U.S.C. section 1367 because those claims are joined with substantial and related claims brought under the trademark laws.

**FACTUAL BACKGROUND**

17.    Savage was founded in 2015 by Matthew Winters ("Winters"), and Defendant Christopher Wheeler ("Wheeler").

18.     Before Wheeler was removed from his position as President and CEO of Savage by Savage's Board of Directors in early 2023, Wheeler and Winters were the sole officers of Savage since its inception, with Winters acting as Secretary, Treasurer, and Chief Financial Officer since December 2021.

19.     Winters, Wheeler, and Winters' sister, Brittany Hawkins, were the three directors of Savage from its inception until the events that gave rise to the Prior Action, as more fully detailed below.

20.     Savage is in the business of designing, marketing, and selling flavored vape products, as well as hemp-derived and cannabis-related products, throughout the United States. As of 2022, Savage had gross sales in excess of $150,000,000 and employed over 250 individuals.

21.     Beginning in or about December 2022, while Wheeler was acting in his capacity as director, President, and CEO of Savage, Wheeler began pursuing the development of a new product line that included as an ingredient a psychoactive distillate, muscimol, found in the mushroom Amanita muscaria. A majority of shareholders and directors believed this product line was not ready for sale to the public, and at a meeting of shareholders and directors held on December 19, 2022, voted against pursuing this product line until further research could be conducted and an agreement could be reached by a majority of the shareholders and directors.

22.     In violation of his Employment Agreement, Wheeler ignored the vote of the Board, and proceeded with directing Savage's financial, marketing, sales, and manufacturing resources to the development of an Amanita muscaria product line.  His efforts, contrary to the express direction of the majority of the Board, led to product being manufactured, packaged, and being ready to ship to customers.  The Board believed that the product line was not yet suitable for release for public consumption and instructed Wheeler to cease the pursuit of this activity.

23.     Wheeler's efforts continued unabated and resulted in an investigation into Wheeler's activities while acting in his capacity as President and CEO.  As a result of

this investigation, Savage discovered that Wheeler misappropriated company funds for his own personal use. Wheeler used the company account as his personal piggy bank, paying tens of thousands of dollars of personal expenses as if they were corporate expenses, evading both payment and personal tax liability. On information and belief, the accounting records reveal that Wheeler, despite his wealth, was stealing from the company.

24.    Because Wheeler would not cease his unauthorized activities related to the launch of the Amanita muscaria product line, and in light of the discovery of the above-described misappropriation of funds, the majority of the Board of Directors terminated Wheeler as President and CEO of Savage on February 16, 2023; however, Wheeler could not be terminated as a director because no special meeting of shareholders had been convened for that purpose, due to the quick pace of the events that led to the need for his immediate termination. In any event, on March 9, 2023, Wheeler resigned as a director of Savage and any affiliated entities via email.

25.    After his termination and while still a director of Savage, on or around February 20, 2023, Wheeler and his brother Defendant P Wheeler caused the creation of "The New Savage Inc.," and on February 21, 2023, the entity was converted to The New Savage LLC ("New Savage").,  New Savage was a direct competitor to Savage.

26.    Wheeler and New Savage engaged in active solicitation of Savage's business partners and customers, in an effort to undermine their relationships with Savage, and spread misinformation to Savage's customers (i.e. wholesalers and distributors of Savage's products) that Savage was going out of business and that Wheeler's new company, i.e. New Savage, was taking over.

27.    Because of Wheeler's unique position/platform, as a founder and former President and CEO of Savage, derogatory comments by Wheeler (as well as others working for Wheeler at his new company), raised the dangerous possibility of being especially damaging to Savage.

28.     On March 30, 2023, in order to protect itself from Wheeler and his wrongful conduct, Savage filed the Prior Action in which Wheeler was the lead defendant: *Savage Enterprises v Christopher Wheeler et al*, United States District Court for the Central District of California, Case No. 8:23-cv-00578-HDV-PVC, which has previously been defined herein as the Prior Action.

29.     On or about June 5, 2023, the parties to the Prior Action including, but not limited to, Defendants Wheeler, P, Wheeler, Freestone, Exodus and Sacred, entered into a Settlement Agreement in the form of a Stipulation and Proposed Order.

30.     The Settlement Agreement/Stipulation and [Proposed] Order executed by Savage and Wheeler on or about June 5, 2023 when signed and submitted to the Court, was not complete in-and-off-itself, as it required and called for the future drafting and execution of several other documents, including a Stock Purchase Agreement by which Savage would buy Wheeler's Savage stock, and 2 Notes.

31.     The parties included in the [Proposed] Order a request that the Court dismiss the Prior Action but retain jurisdiction over the parties in part so that additional ancillary but necessary documents were drafted and then executed.  The Court did in fact retain jurisdiction pursuant to the July 7, 2023 Order by the Honorable Hernan D. Vera, Judge of the United States District Court [Dkt. Nos. 56 and 57].

32.     After submitting the Settlement Agreement/Stipulation and [Proposed] Order, the parties eventually did complete, execute and exchange all of the necessary additional documents, such as the Stock Purchase Agreement and the 2 Notes.

33.     On information and belief, Plaintiff alleges that Defendant Wheeler shut down certain former companies, New Savage and Exodus Enterprises LLC, and is currently operating two companies competing with Savage under the names Exodus and Sacred, which sell product through various channels including, but not limited to, the URL www.exoclub.com.

34.     After all of the documents were drafted, executed and exchanged, Savage began making monthly payments to Wheeler in the amount of one hundred and twenty-

three thousand, nine hundred and twenty-four dollars ($103,924), and did so through the entirety of 2023, and to date is current with its payments.

35.     In Paragraph 3 of the Settlement Agreement/Stipulation attached hereto as **Exhibit 1**, which then became the Order of the Court and an agreed upon injunction attached hereto as **Exhibit 2**, Defendants agreed that "Defendants' owners, officers, agents, servants, employees, and all persons acting in concert or in participation with Defendants are PERMANENTLY ENJOINED from:

     a.   Infringing the SAVAGE trademark, which Plaintiff owns U.S. trademark applications for, U.S. Serial Nos. 97009232 and 97009205;

     b.   Infringing Plaintiff's packaging designs, which constitute Plaintiff's inherently distinctive and valuable trade dress (the "Savage Trade Dress") depicted in **Exhibit A** attached hereto;

     c.   Manufacturing, distributing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute, sell, market, advertise, or promote goods bearing trade dress that infringes and is confusingly similar to the Savage Trade Dress or the Savage trade name and trademark or any other trade dress or trade name that is confusingly similar to Plaintiff's trademark, trade name or the Savage Trade Dress;

     d.   Representing that Defendants are Plaintiff, including making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that: (i) Defendants' goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Plaintiff, or (ii) Plaintiff's goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Defendants;

     e.   Using or authorizing any third party to use any false description, false representation, or false designation of origin, or any marks, names,

words, symbols, devices, or trade dress that falsely associates such business, goods and/or services with Plaintiff or tend to do so; and

    f.    Registering or applying to register any trademark, service mark, domain name, trade name, or any other mark that infringes or is likely to be confused with Plaintiff's Savage trade name and trademark or the Savage Trade Dress."

36.    In agreeing to the terms of the Settlement Agreement/Stipulation and Injunction, among the most important and material terms was the Mutual Non-Disparagement Provision which states:

"10.1 MUTUAL NON-DISPARAGEMENT. Subject to applicable law, each of the Parties covenants and agrees that, neither it nor any of its respective agents, subsidiaries, controlled affiliates, successors, assigns, partners, members, officers, key employees or directors, shall in any way publicly disparage or otherwise defame or slander the other Party or such other Party's subsidiaries, affiliates, successors, assigns, partners, members, officers, directors, employees, stockholders, agents, attorneys or representatives, or any of their businesses, products or services, in any manner that would reasonably be expected to damage the business or reputation of such other Party, their businesses, products or services of their subsidiaries, affiliates, successors, assigns, officers (or former officers), directors (or former directors), employees, stockholders, agents, attorneys or representatives."

37.    This Non-Disparagement Provision was absolutely critical to Savage's agreeing to the Settlement Agreement/Stipulation because of Wheeler's unique position as a founder and former President and CEO of Savage, which gave Wheeler a platform with the potential to destroy Savage by disparaging it and/or Savage's current leadership.  Savage felt compelled to buy its peace with Wheeler to stop him from disparaging Savage and its leaders, and Savage believed that there was a real likelihood, and it had a genuine fear, that Wheeler's continuing disparagement of Savage to

Savage's customers and employees would destroy Savage as an ongoing and viable business.  The other individual Defendants, P. Wheeler and Freeston, as well as the corporate defendants Exodus and Sacred, agreed to and were bound by the Non-Disparagement Provision in the Settlement Agreement/Stipulation.

38.   Accordingly, the Non-Disparagement Provision, by which Wheeler, P. Wheeler, and Freestone agreed to stop disparaging Savage and its leadership team, was a critical and material reason why Savage agreed to the terms of the Settlement Agreement/Stipulation, including agreeing to pay Wheeler in cash and other assets (mostly real estate) which was valued at $5,690,348, as Savage believed that by buying out Wheeler via the Settlement Agreement/Stipulation, Savage was to buy its peace with Wheeler, his employees and companies.

39.   Despite Savage fully performing all of its obligations to Wheeler and the other Defendants, including making all of the $103,924 monthly installment payments to him to date, and in breach of the Non-Disparagement Provision, Wheeler has made the following statements to members of the public, including but not limited to Savage's customers and its employees:

- Savage will go out of business by end of year/soon;
- [Savage's] Management has no idea what they are doing;
- [Savage's] Leadership is too busy fighting;
- We all know where all the money is going while Savage is tanking
- Savage is going to fail;
- You [Savage's employees] need to jump ship and come work for me before it's too late;
- Savage can't ship orders;
- Savage can't come out with any new products;
- Only the name [Savage] has value anymore the business is dead;
- The business is run by bean counters and won't survive; and
- Savage is a "dumpster fire".

40.     On information and belief, P. Wheeler and Freestone participated and/or made the same or similar disparaging statements to third parties and the public in violation of the Non-Disparagement Provision of the Settlement Agreement/Stipulation.

41.     In addition to disparaging Savage in violation of the Non-Disparagement Provision, after Savage moved to its current location at 7505 Irvine Center Drive, Suite 200, Irvine, California, Wheeler sought out and leased space for his new, competing company(s) kitty-corner from Savage's offices, so that Savage (and its employees) now share the same parking lot and can see each other's offices by simply looking out the window at each other.  Upon information and belief, Wheeler chose to locate his new company as close as possible to Savage as an intentional act so that when his campaign of disparaging Savage, including his disparaging it to Savage's employees in order to steal them for his new, competitive business, which is designed to destroy Savage as a business, will allow him to steal Savage itself (i.e. its employees, brand and intellectual property) after he has ruined it as an ongoing business under its current ownership.

**BREACH OF THIS COURT'S JULY 7, 2023 ORDER; CONTEMPT**

42.     In violation of this Court's July 7, 2023 Order ("Order") [*see* Docket No. 56, attached hereto as **Exhibit 1**], which approved the parties' stipulated settlement agreement ("Settlement") and includes a Permanent Injunction (the "Injunction") [*see* Docket No. 57, attached hereto as **Exhibit 2**], Defendants have continued to sell, distribute, advertise, offer for sale and sell products using Savage's packaging designs, symbols and depictions, which constitute Savage's inherently distinctive and valuable trade dress (the Savage Trade Dress).  In particular, Defendants continued to market and sell products with the distinctive symbols and depictions of "dripping fruit" and "dripping paint" that has characterized Savage products for years.  These products were identified in the Complaint in the Prior Action, and Exhibit A to the Settlement, Order and Injunction.  Such conduct by Savage is a direct and material breach of the Settlement, Order, and Injunction.

43.     Defendants, and Wheeler in particular, also continue to disparage Savage, including making disparaging statements to Savage's employees in effort to coerce – or "poach" – Savage's employees from terminating their employment with Savage, and to work for Wheeler's companies Exodus, Sacred, and Does 1-10 (previously defined as "Exodus Parties").  Wheeler's conduct in violation of the Injunction and Settlement has materially frustrated the purpose of the Settlement, causing irreparable harm to Savage.

44.     The violations of the Settlement and Injunction, as well as the breaches of the Settlement as to disparagement and solicitation, have caused Savage to suffer irreparable injury and damages.

45.     Savage's counsel made several attempts to resolve these issues informally with Defendants' counsel, including sending a Cease-and-Desist Letter dated January 19, 2024, to no avail.

46.     Further, Plaintiff was forced to file a Motion for Contempt in the Prior Action, which was granted in part and denied in part. Wheeler has been held in contempt of the Order. [Dkt No. 104, attached hereto as **Exhibit 3**]

47.     This action stems from the damages inflicted upon Plaintiff by and through Defendants' willful violation of the Settlement and Order. Savage is continuing to be irreparably harmed by Defendants' willful and ongoing violations.

## FIRST CAUSE OF ACTION:

## FALSE DESINATION OF ORIGIN / INFRINGEMENT OF UNREGISTERED TRADE DRESS

### (15 U.S.C. § 1125(a) and California common law)

(Plaintiff Savage Against Wheeler, Exodus, Sacred, and DOES 1-10, Inclusive)

48.     Plaintiff hereby reincorporates by reference all the allegations in paragraphs 1 through 47 as if they were set forth in full in this paragraph.

49.     Defendants' conduct as alleged herein constitutes false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and infringement of unregistered trade dress under the California common law.

50.     Savage has used the SAVAGE trademark and trade dress in interstate commerce since at least as early as May 1, 2021 and owns U.S. trademark applications for the SAVAGE mark, U.S. Serial Nos. 97009232 and 97009205.

51.     As a result of its widespread, continuous, and exclusive use of the Savage Trade Dress to identify its vaping, CBD, and Amanita muscaria products and Savage as their source, Plaintiff owns valid and subsisting ownership rights to the Savage Trade Dress. The Savage Trade Dress is inherently distinctive and has gained substantial customer recognition in the marketplace. Savage has expended substantial time, money, and resources marketing, advertising, and promoting its goods sold under the Savage Trade Dress.

52.     Savage advertises its CBD products sold under the Delta Extrax brand and Amanita muscaria products sold under the Trippy Extrax brand, both featuring the Savage Trade Dress, via respective websites, social media channels, and trade websites, shows, and publications.

53.     Specifically, the infringing acts include, but are not limited to, the sale of products by Wheeler and the Exodus Parties on the www.exoclub.com website, as well as on numerous third-party reseller sites.

54.     More specifically, by way of example, the sale of the Exodus products "Amanita Mutiplex Vape" in Orange Pineapple and Strawberry Kiwi (**Exhibit 4**) clearly and unequivocally infringe on Savage's trade dress and depictions on the "Orange Crush Delta-6" and "Strawana" products (**Exhibit 5**), and violate the Injunction against authorizing the sale of products that is likely to lead the public to believe that Exodus products are connected with Savage.  Attached hereto as **Exhibits 4 and 5** are website printouts downloaded from the internet from January through March 2024, which depict the following products for sale by Exodus as compared with Savage's products:

| Savage Product: https://www.deltaextrax.com/product/thc-b-delta-6-thc-disposable-pre-heat-line/ | Exodus Product: https://exoclub.com/product/1g-mushroom-vape-single-orange-pineapple/ |
|---|---|
|  |  |
| Savage Product: https://www.deltaextrax.com/product/thc-b-delta-6-thc-disposable-pre-heat-line/ | Exodus Product: https://exoclub.com/product/1g-mushroom-vape-strawberry-kiwi/ |
|  |  |

55. These products – the Orange, Strawberry, and Blue Berry flavors – contain Savage's "dripping fruit" symbols and depictions that have been associate with Savage products for years.

56.   Thereafter, Savage's Matthew Winters personally reviewed the www.exoclub.com website, and identified the following products that Wheeler and Exodus continued to sell that violate the Injunction:

      a.   Exodus Amanita Multiplex Vape – Orange Pineapple;

      b.   Exodus Amanita Multiplex Vape – Strawberry Kiwi;

      c.   Exodus Amanita Multiplex Vape – Blueberry;

      d.   Exodus Pink Runtz + Orange Creamsicle Duo Cartridge 4G;

      e.   Exodus Pineapple Cake + Purple Tangie Duo Cartridge 4G;

      f.   Exodus Blue Widow + Lime Sherbet Duo Cartridge 4G;

      g.   Exodus Disposable 5G THC Vapes – Strawberry Amnesia, Orange Cake, Black Cherry Gelato, White Gummy, Purple Urkle, Dabbalicious, Blue Steel, Apple Fritter, and Gold Punch.

57.   Attached hereto as **Exhibit 6** are website printouts downloaded from the internet on or about January through March 2024, showing products that continue to be sold on the www.exoclub.com website.  Attached hereto as **Exhibit 7** are website printouts downloaded from the internet on or about January 25, 2024, that are sold on Savage's www.deltaextrax.com website.  These products all contain Savage's "dripping paint" symbols and depictions.

58.   These products, and others, were previously identified in the Complaint and First Amended Complaint filed in the Prior Action as products sold by Wheeler and the Exodus Parties that infringed upon Savage's products. [Dkt. No. 53, **Exhibit 8,** also attached hereto.] These Savage products were thereafter included on **Exhibit A** to the Settlement and Injunction to clearly identify Savage's trade dress and depictions that are protected by the Injunction. [Dkt. Nos. 56-4 and 57, also attached hereto as Exhibits 1 and 2.]  Despite the identification in the Settlement and Injunction, and despite Savage's demands to cease and desist, Exodus continued to sell products with Savage's trade dress and depictions on the www.exoclub.com website. (See **Exhibits 4 and 6** attached hereto.)  Specifically, the "dripping fruit" and "dripping paint" symbols and

depictions have been associated with Savage products for years, and were specifically identified in the Injunction.

59.    Further examples of the Exodus products sold on the www.exoclub.com website that infringe upon Savage Trade Dress, including symbols and depictions, in violation of the Settlement and Injunction include:

| Exodus Product | Savage Trade Dress |
|---|---|
| 1. Exodus Strawberry Amnesia Disposable 5G | *See Exhibit A, page 3* |
|  |  |
| 2. Exodus 5G Disposables Bundle | *See Exhibit A, page 3* |

 

60.     Savage also discovered that Wheeler and the Exodus Parties are and/or were selling such Exodus products on websites meant to engender confusion with Savage.  Specifically, the Exodus products Amanita Mutiplex Vape in Orange Pineapple and Strawberry Kiwi (captured above) are on sale through a website www.cbdsavage.com: Exodus Amanita Multiplex Disposable | 1000mg | - CBD Savage.  The sale of Exodus products, with Savage trade dress on the *cbdsavage.com* website is an intentional effort to cause confusion in the marketplace.  Attached hereto as **Exhibit 9** is a website printout downloaded from CBD Savage website www.cbdsavage.com on or about January 24, 2024.

61.     Wheeler and the Exodus Parties continued to advertise and sell infringing product through at least April 5, 2024.  Exodus also continued to sell its products on the CBD Savage website, including products with the "dripping paint" symbols associated with Savage products.

62.     Upon information and belief, Defendants have committed the foregoing acts of infringement with full knowledge of Plaintiff's prior rights in the Savage

trademark and the Savage Trade Dress and with the willful intent to cause confusion and trade on Plaintiff's goodwill.

63.     Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**SECOND CAUSE OF ACTION:**

**BREACH OF CONTRACT – ADVERTISING AND SALE OF PRODUCT**

(Plaintiff Savage Against All Defendants and DOES 1-10, Inclusive)

64.     Plaintiff hereby reincorporates by reference all the allegations in paragraphs 1 through 63 as if they were set forth in full in this paragraph.

65.     On or about June 5, 2023, Savage, on the one hand, and Wheeler, the Individual Defendant, and the Exodus Parties, on the other hand, entered into a contract in the form of a Settlement Agreement/Stipulation, including ancillary documents that were subsequently drafted, executed and exchanged between them.

66.     Savage and Wheeler also entered into a Stock Purchase Agreement (the "SPA"), and two related notes, pursuant to which Savage agreed to buy-out Wheeler's shares/ownership interest in Savage (and other related entities) in exchange for payment via cash and other assets valued at $5,690,348.

67.     Paragraph 3 of the Settlement Agreement/Stipulation enjoins Defendants from infringing on Savage's marks and trade dress: "Defendants' owners, officers, agents, servants, employees, and all persons acting in concert or in participation with Defendants are PERMANENTLY ENJOINED from:

　　　　　a.     Infringing the SAVAGE trademark, which Plaintiff owns U.S. trademark applications for, U.S. Serial Nos. 97009232 and 97009205;

18

b.  Infringing Plaintiff's packaging designs, which constitute Plaintiff's inherently distinctive and valuable trade dress (the "Savage Trade Dress") depicted in **Exhibit A** attached hereto;

c.  Manufacturing, distributing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute, sell, market, advertise, or promote goods bearing trade dress that infringes and is confusingly similar to the Savage Trade Dress or the Savage trade name and trademark or any other trade dress or trade name that is confusingly similar to Plaintiff's trademark, trade name or the Savage Trade Dress;

d.  Representing that Defendants are Plaintiff, including making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that: (i) Defendants' goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Plaintiff, or (ii) Plaintiff's goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Defendants;

e.  Using or authorizing any third party to use any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associates such business, goods and/or services with Plaintiff or tend to do so; and

f.  Registering or applying to register any trademark, service mark, domain name, trade name, or any other mark that infringes or is likely to be confused with Plaintiff's Savage trade name and trademark or the Savage Trade Dress."

68.  Paragraphs 3b and c, enjoin Defendants and Defendants' owners, officers, agents, servants, employees, and all persons acting in concert or participation with Defendants from use of the name "Savage" or any other derivation of the name

"Savage" in any manner including, but not limited to, in "marketing, advertising, promoting, or authorizing any third party to manufacture, distribute, sell, market, advertise, or promote goods bearing trade dress that infringes and is confusingly similar to the Savage Trade Dress or the Savage trade name and trademark."

69.     Paragraph 3b also enjoins Defendants from "Infringing Plaintiff's packaging designs, which constitute Plaintiff's inherently distinctive and valuable trade dress.

70.     Paragraph 3d enjoins Defendants from "making or displaying any statement, representation, or **depiction** that is likely to lead the public or the trade to believe that: (i) Defendants' goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Plaintiff," and 3e enjoins Defendants from using any "marks, names, words, **symbols**, devices, or trade dress that falsely associates such business, goods and/or services with Plaintiff or tend to do so." (Emphasis added.)

71.     Nevertheless, Defendants have continued to sell, distribute, advertise, offer for sale and sell products using Savage's packaging designs, symbols, and depictions, including those which constitute Savage's inherently distinctive and valuable trade dress (the Savage's Trade Dress).

72.     Such advertising and sale of infringing products is a direct and material breach of the Settlement, as well as the agreed upon Order and Injunction, which has caused damage to Savage in an amount to be proven at trial, but in no event less than $2,750,000 for purposes of a default.

## **THIRD CAUSE OF ACTION:**
## **BREACH OF CONTRACT – DISPARAGEMENT**

(Plaintiff Savage Against All Defendants and DOES 1-10, Inclusive)

73.     Plaintiff hereby reincorporates by reference all the allegations in paragraphs 1 through 72 as if they were set forth in full in this paragraph.

74.     A material term in the Settlement is a Non-Disparagement Provision found at section 10.1 of the Settlement which expressly provides:

"10.1  MUTUAL NON-DISPARAGEMENT. Subject to applicable law, each of the Parties covenants and agrees that, neither it nor any of its respective agents, subsidiaries, controlled affiliates, successors, assigns, partners, members, officers, key employees or directors, shall in any way publicly disparage or otherwise defame or slander the other Party or such other Party's subsidiaries, affiliates, successors, assigns, partners, members, officers, directors, employees, stockholders, agents, attorneys or representatives, or any of their businesses, products or services, in any manner that would reasonably be expected to damage the business or reputation of such other Party, their businesses, products or services of their subsidiaries, affiliates, successors, assigns, officers (or former officers), directors (or former directors), employees, stockholders, agents, attorneys or representatives."

75.     Savage has fully performed, or been excused from performance, all of its obligations to Wheeler and the Exodus Parties under the Settlement, including but not limited to causing the transfer of various interests in real property to Wheeler in a value of approximately two million dollars ($2,000,000) and making all of the $103,924 monthly installment payments due to him to date.

76.     Despite the contractual Non-Disparagement Provision which Defendants agreed to as part of the Settlement, and Savage's timely transfer to Wheeler of approximately $3,000,000 in cash and real estate interests, Wheeler, individually and as Owner and CEO of Exodus and Sacred, made numerous disparaging statements and/or public communications about Savage and Savage's leadership team to members of the public in breach of the Non-Disparagement Provision, including but not limited to Savage's customers and its employees:

- Savage will go out of business by end of year/soon;
- [Savage's] Management has no idea what they are doing;

- [Savage's] Leadership is too busy fighting;
- We all know where all the money is going while Savage is tanking
- Savage is going to fail;
- You [Savage's employees] need to jump ship and come work for me before it's too late;
- Savage can't ship orders;
- Savage can't come out with any new products;
- Only the name [Savage] has value anymore the business is dead; and
- The business is run by bean counters and won't survive; and
- Savage is a "dumpster fire".

77.   On information and belief, P. Wheeler and Freestone participated and/or made the same or similar disparaging statements to third parties and the public in violation of the Non-Disparagement Provision of the Settlement Agreement/Stipulation.

78.   Savage has been directly harmed by Defendants' disparaging statements about it and its leadership in direct breach of the Non-Disparagement Provision in that it has lost employees and customers as a direct result of Defendants' disparaging statements and/or public communications, and Savage's reputation with both its customers and generally within the industry has been substantially damaged due to Defendants' breach of the Non-Disparagement Provision.

79.   To date the amount of Savage's damages caused by Defendants' breach of the Non-Disparagement Provision has not been calculated and is increasing over time, as such Savage's damages will be the subject of expert analysis, opinion and testimony, and will be determined according to proof at trial, but in no event less than $2,750,000 for purposes of a default.

///

///

**FOURTH CAUSE OF ACTION:**

**BREACH OF THE IMPLIED COVENANT**

**OF GOOD FAITH AND FAIR DEALING**

(Plaintiff Savage Against All Defendants and DOES 1-10, Inclusive)

80.     Plaintiff hereby reincorporates by reference all the allegations in paragraphs 1 through 79 as if they were set forth in full in this paragraph.

81.     Under California law, there is an implied covenant of good faith and fair dealing in every contract, including the Settlement between Savage, on the one hand, and Defendants, on the other hand, that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.

82.     Defendants have violated the Settlement's covenant of good faith and fair dealing by, among other things, stealing/poaching Savage's employees for his new, competing company (which was accomplished at least partially through disparagement of Savage and Savage's leadership team), by harming Savage's relationship with its customers (which was accomplished at least partially through disparagement of Savage and its leadership team), and by moving Wheeler new company offices, including Exodus and Sacred, and Does 1-10, directly kitty-corner to Savage's new offices which now shares a parking lot with Savage, the cumulative result of all of these, (as well as other acts), has harmed Savage's day-to-day operations and reduced Savage's cash-flow, all while Savage transferred over $2,000,000 in cash and other assets to Wheeler – and while Savage made monthly payments of $103,924 to him for his Savage shares.

83.     While some of Defendants' wrongful conduct as alleged herein does not technically transgress the express covenants of the Settlement Agreement/Stipulation, e.g. poaching Savage's employees and moving his company to a location directly kitty-corner to Savage's new office, the intended result of these actions in conjunction with Wheeler's ongoing campaign of disparaging Savage, along with the other Exodus Parties and Individual Defendants, is meant to harm Savage and its leadership to a point where Wheeler eventually destroys Savage's ability to operate as an ongoing business,

especially while also paying Wheeler a monthly installment of $103,924 for his Savage shares, so that Wheeler can later re-claim Savage's name, employees, brand, and all of its intellectual property.

84.    These acts by Defendants were designed to, and in fact do, frustrate Savage's rights to the benefits of the Settlement that Savage reasonably expected when it thought it was buying its peace from Wheeler and the Exodus Parties, as well as the Individual Defendants, when it entered into the Settlement to stop Defendants from destroying Savage's relationships with its employees and customers, and harming its reputation in the industry.

85.    Savage has been directly harmed by Defendants' actions in breach of the implied covenant of good faith and fair dealing in the Settlement in that it has lost employees and customers as a direct result of Defendants' disparaging statements and/or public communications, and Savage's reputation with both its customers and generally within the industry has been substantially damaged due to Defendants' breach of the Non-Disparagement Provision and other conduct directed at Savage meant to specifically and directly harm Savage in breach of the implied covenant of good faith and fair dealing in every contract, including the Settlement.

86.    To date the amount of Savage's damages caused by Defendants' actions, and those of Does 1-10, in breach of the implied covenant of good faith and fair dealing in the Settlement has not been calculated and is increasing over time, as such Savage's damages will be the subject of expert analysis, opinion and testimony, and will be determined according to proof at trial, but in no event less than $2,750,000 for purposes of a default.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays as follows with regard to the above causes of action:

1.    For general and specific damages according to proof at time of trial, but in no event less than $2,750,000;

2. For attorneys fees as allowed by contract and statute;

3. For punitive damages, where allowed, to be determined at trial;

4. For interest as allowed by law; and

5. For cost of suit herein.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on its first, second, third, and fourth causes of action.


Dated: May 7, 2024                    WINTHROP LAW GROUP, P.C.


                                      */s Reid Winthrop*
                                      Reid A. Winthrop
                                      Attorneys for Plaintiff,
                                      SAVAGE ENTERPRISES